

1  Arthur A. Hartinger (SBN: 121521)
   ahartinger@meyersnave.com
2  Linda M. Ross (SBN: 133874)
   lross@meyersnave.com
3  Jennifer L. Nock (SBN: 160663)
   jnock@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   555 12th Street, Suite 1500
5  Oakland, California 94607
   Telephone: (510) 808-2000
6  Facsimile: (510) 444-1108

7  Attorneys for Plaintiff
   City of San Jose

8

9               UNITED STATES DISTRICT COURT

10    NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11  CITY OF SAN JOSE,                    Case No. **C12-02904**

12              Plaintiff,
                                         **COMPLAINT FOR DECLARATORY**
13        v.                             **RELIEF**
                                         **[28 U.S.C. Section 2201(a)]**
14  SAN JOSE POLICE OFFICERS'
    ASSOCIATION;  SAN JOSE
15  FIREFIGHTERS, I.A.F.F. LOCAL 230;    Trial Date:    None Set
    MUNICIPAL EMPLOYEES' FEDERATION,
16  AFSCME, LOCAL 101;  CITY
    ASSOCIATION OF MANAGEMENT
17  PERSONNEL, IFPTE, LOCAL 21.

18              Defendants.

19

20                  **INTRODUCTION**

21        1.     This declaratory relief action is brought to resolve a dispute arising under the

22  United States Constitution, including Article 1, § 10 -- the federal "contracts clause" -- and the 5th

23  and 14th Amendments.  Under 28 U.S.C. § 1367(a), this Court also has jurisdiction over the state

24  law issues presented by this action, because they are part of the same case or controversy as the

25  federal law issues.

26        2.     The City of San Jose ("the City") is committed to providing services that are

27  essential to the quality of life and well-being of San Jose residents, including police protection;

28  fire protection; street maintenance; libraries; and community centers ("Essential City Services").

                              1

1    3.    The City's ability to provide Essential City Services has been and continues to be
2  threatened by dramatic budget cuts caused in large part by the climbing and unsustainable cost of
3  employee benefit programs, exacerbated by the economic crisis. For example, in the last few
4  years, City payments for employee retirement costs have dramatically increased, from $107
5  million in 2009-10, to $245 million in 2011-12, and are projected to be $319 million in 2014-15 –
6  approximately 24% of the City's General Fund. In March 2012, Moody's downgraded San Jose's
7  general obligation and lease revenue bonds, in part because of San Jose's "[i]ncreasing retirement
8  cost burden."

9    4.    In this context, the City Council voted to place Measure B on the ballot for the June
10  5, 2012 election. A true and correct copy of Measure B is attached hereto as Exhibit 1.

11    5.    Measure B is intended to adjust post-employment benefits in a manner that protects
12  the City's viability and public safety, at the same time allowing for the continuation of fair post-
13  employment benefits for the City's workers. Without the reasonable cost containment provided in
14  Measure B, the economic viability of the City, and hence, the City's employment benefit
15  programs, will be placed at risk.

16    6.    An actual controversy has arisen and now exists between the parties relating to the
17  legality of Measure B for which the City desires a declaration of rights. A declaratory judgment is
18  necessary to confirm that Measure B does *not* violate the contracts clauses contained in the federal
19  and state constitutions, or federal or state due process guarantees, and does *not* impair any vested
20  rights. This judgment is necessary because the defendants contend, on behalf of their members,
21  that Measure B contains provisions that violate employee vested rights to certain retirement
22  contributions and benefits and therefore is (all or in part) a violation of the contracts clauses, and
23  federal and state due process guarantees.

24    7.    The City contends that Measure B does not violate employee vested rights. San
25  Jose is a Charter City with "plenary authority" to provide in its Charter for the compensation of its
26  employees. The San Jose City Charter reserves the City's right to create and amend the City's
27  retirement plans. The City's Charter and Municipal Code permit modification of employee
28  contribution rates to the City's retirement systems to defray unfunded liabilities as well as the

1   other changes contained in Measure B. City practices confirm this authority. For these reasons,
2   the City has retained the right for the City's voters to make changes to employee contribution rates
3   and to make the other changes contained in Measure B.

4       8.    This action does not seek to recover any damages, attorneys' fees or costs against
5   the defendants, or any employees or retirees who may be impacted in this action. This is solely an
6   action for declaratory relief to confirm the legality of Measure B, so that the City can begin
7   implementing its provisions in good faith.

8       9.    The City Council reasonably and responsibly anticipated this legal dispute at the
9   time it voted to place Measure B on the ballot, and thus incorporated a grace period into the
10   measure with respect to the increased employee contributions – the component of the Measure
11   with the most direct economic impact on employees. The grace period delays implementation of
12   increased pension contributions (which are an important component of the cost containment /
13   sustainability features in Measure B) until June 23, 2013. This grace period is intended to permit
14   adjudication of the legality of this component of Measure B before it impacts City employees

15       10.    To implement Measure B in its entirety, the City must develop administrative
16   procedures and draft implementing ordinances for submission to the City Council. The City must
17   move expeditiously in these efforts, in order to implement the various provisions of Measure B.

18       11.    In light of the threat to Essential City Services, the express grace period referenced
19   above, and the need for the City to begin implementation of Measure B, it is urgent that the Court
20   swiftly adjudicate the legality of Measure B. The City asks this Court to place this matter on a
21   preferential and expedited schedule to confirm that the changes enacted in Measure B are lawful,
22   and thus initially resolve the controversy.

23                                        **PARTIES**

24       12.    Plaintiff City of San Jose is a California municipal corporation, organized as a
25   Charter City under the California Constitution and laws of the State of California. The City
26   provides its residents with essential services such as police protection, fire and emergency
27   response, libraries, parks and community centers. The City has provided its employees with a
28   ///

1   generous variety of fringe benefits, including two defined benefit pension plans and retiree health
2   benefits, among other benefits.

3       13.     The San Jose Police Officers Association ("SJPOA") is an employee association
4   that represents San Jose's police officers and negotiates with the City over the wages, hours and
5   other terms and conditions of employment for its members. The SJPOA contends that all or part
6   of Measure B violates the vested rights of SJPOA members to certain retirement and other post-
7   employment benefits.

8       14.     The San Jose Fire Fighters, I.A.F.F. LOCAL 230 ("LOCAL 230") is an employee
9   association that represents San Jose's firefighters and negotiates with the City over wages, hours
10  and other terms and conditions of employment for its members. LOCAL 230 contends that all or
11  part of Measure B violates the vested rights of LOCAL 230 members to certain retirement and
12  other post-employment benefits.

13      15.     The Municipal Employees Federation ("MEF"), AFSCME, Local 101, is an
14  employee organization that represents a wide range of City employees and negotiates with the City
15  over wages, hours and other terms and conditions of employment for its members. MEF contends
16  that all or part of Measure B violates the vested rights of its members to certain retirement and
17  other post-employment benefits.

18      16.     The City Association of Management Personnel, IFPTE, Local 21 ("CAMP") is an
19  employee organization that represents City management level employees and negotiates with the
20  City over wages, hours and other terms and conditions of employment for its members. CAMP
21  contends that all or part of Measure B violates the vested rights of its  members to certain
22  retirement and other post-employment benefits.

23                          **JURISDICTION AND VENUE**

24      17.     This Court has subject matter jurisdiction over this matter because one or more of
25  the disputes concerning Measure B arise under the federal Constitution. Further, Plaintiffs'
26  contentions concerning the parallel provisions in the California Constitution arise from the same
27  transactions or occurrences as the federal claims. The Court has personal jurisdiction over the
28  parties because they are located and conduct business in this judicial district and this action arises

1  from conduct occurring in the City of San Jose.

2      18.    Venue is proper in this district and this division because the City and Defendants
3  are located in this district and division.

4                          **INTRADISTRICT ASSIGNMENT**

5      19.    Plaintiff City of San Jose is located in Santa Clara County.  Defendants are
6  employee organizations that represent City of San Jose employees affected by Measure B and on
7  information and belief have offices located in Santa Clara County.

8                          **GENERAL ALLEGATIONS**

9      20.    San Jose provides generous retirement and post-employment benefits for its
10 employees.  The City provides two defined benefit pension plans for its employees, one for police
11 and fire employees ("Police and Fire Plan"), the other for all other "miscellaneous" employees
12 ("Federated Plan"), described generally as follows.  Under the Police and Fire Plan, an employee
13 can retire at age 50 with 25 years of service, at age 55 with 20 years of service, or at any age with
14 30 years of service.  The employee receives 2.5% of final compensation for each of the first 20
15 years of service.  For each year over 20 years, police receive an additional 4% (police) . After 20
16 years, fire fighters receive 3% for all years of service.  Police and fire employees receive monthly
17 payments constituting up to 90% of their final monthly compensation and a yearly COLA of 3%
18 per year.

19     21.    Under the Federated Plan, an employee can retire at age 55 with 5 years of service
20 or at any age with 30 years of service.  The employee receives 2.5% of final compensation for
21 each year of service, and receive monthly payments constituting up to 75% of final monthly
22 compensation, and a yearly COLA of 3% per year.

23     22.    The City's' yearly cost of pay for employee retirement benefits has dramatically
24 increased, and has thus negatively impacted the City's ability to provide Essential City Services.
25 The increase in pension costs is attributable to enhanced retirement benefits, increased employee
26 salaries, and the downturn in the financial markets.

27     23.    Between Fiscal Years ("FY") 1998-99 to 2009-10, the City's annual contributions
28 for pension and retiree health benefits increased from approximately $54 million to  $107 million.

1 (City Auditor Report, "Pension Sustainability: Rising Costs Threaten The City's Ability to
2 Maintain Service Levels," pp. 18-22.)  For FY 2012-13, the City's annual costs are projected to be
3 $245 million, with contribution rates of 66% for police and fire and 52% for federated employees.
4 By FY 2014-15, the City's annual contribution are projected to be $319 million, with contribution
5 rates of more than 78% of payroll for police and fire and 65% of payroll for Federated employees.
6 (City of San Jose, Future Retirement Costs Study Session, March 29, 2012)

7       24.    Because of rising retirement costs, the City has been forced to lay off employees
8 and reduce services.  In the last few years, staffing has been reduced as follows:  police officers
9 (22%), fire department (13.5%) (before restoration from federal grants), library staff (26%), and
10 parks and recreation staff (35%).  These cuts have resulted in fewer police patrols, an increase in
11 violent crime, and reduced fire, library, parks and other community services. ("Fiscal and Service
12 Level Emergency Report; An Evaluation of Conditions in the City of San Jose," Appendix A –
13 Impacts on Services, pp. 270-271, 289-290, 293, 297, 309-310.)

14       25.    On March 6, the City Council voted to call an election on June 5, 2012 "for the
15 purpose of voting on a ballot measure to amend the San Jose City Charter to add a new Article
16 XV-A."  As presented to the voters, the Measure B reads: "PENSION MODIFICATION.  Shall
17 the Charter be amended to modify retirement benefits of City employees and retirees by:
18 increasing employees' contributions, establishing a voluntary reduced pension plan for current
19 employees, establish pension cost and benefit limitations for new employees, modify disability
20 retirement procedures, temporarily suspend retiree COLAs during emergencies, require voter
21 approval for increases in future pension benefits."

22       26.    Measure B is entitled "The Sustainable Retirement Benefits and Compensation
23 Act."  The "Findings" for the Act state that the City's ability to provide its citizens with "Essential
24 City Services" -- such as police and fire protection, street maintenance and libraries -- is
25 threatened by budget cuts. (Section 1501-A)  The stated "Intent" of the Act is to "ensure the City
26 can provide reasonable and sustainable post-employment benefits while at the same time
27 delivering Essential City Services."  (Section 1502-A)

28 ///

27.     Measure B contains the following provisions, among others:

**A.      Employee Contribution Rates. (Section 1506-A)**  Beginning June 23, 2013, the Act requires that the compensation of current employees be adjusted to defray the unfunded liabilities in their pension plans.  The Act requires employees to make additional contributions to the retirement system in increments of 4% of pensionable pay per year up to a maximum of 16% of pensionable pay per year, but no more than 50% of the costs per year to amortize any pension plan unfunded liabilities.  The adjustments in compensation will be treated as additional retirement contributions to employees' retirement accounts

**B.      VEP (Section 1507-A).**  Under the Act, as an alternative to having their pay adjusted, employees may voluntarily opt into a "Voluntary Election Program."  Under this program, employees retain their yearly accrual rate for years already served (2.5% per year Federated and 2.5%- 4% Police and Fire), retain their maximum retirement benefit as a percentage of pay (75% Federated, 90% Police and Fire), pay employee contributions based on the existing Charter formula, but do not pay for any unfunded liability.

In exchange for no reduction in pay, the VEP provides a different pension plan.  The VEP reduces the accrual rate for future service (2% per year), raises the eligibility age for retirement over time (55 to 62 for miscellaneous, 50 to 57 for safety), limits cost of living adjustments to a maximum of 1.5% based on the  CPI, and requires "final compensation" to be determined by an average of three highest years of pay instead of one, among other changes.

Implementation of the VEP is contingent upon IRS approval.  Unless and until the VEP is implemented, employees are subject to the pay adjustment in Section 1506-A.

**C.      Disability Retirements (Section 1509-A)**.  Under the Act, to receive a disability retirement, City employees "must be incapable of engaging in any gainful employment for the City, but not yet eligible to retire."  City employees are considered "disabled" if they "cannot do the work they did before" and "cannot perform any other jobs described in the City's classification plan" or in the case of safety employees, "cannot perform any other jobs described in the City's classification plan in the employee's department."

///

1     Determinations of disability will be made by an independent panel of medical experts

2  appointed by the City Council, with a right to appeal to an administrative law judge

3     **D.     Emergency Measures to Contain Cost of Living Adjustments (Section 1510-A).**

4  Under the Act, if the City Council "adopts a resolution declaring a fiscal and service level

5  emergency, with a finding that it is necessary to suspend increases in cost of living payments to

6  retirees," the City may temporarily suspend cost of living adjustments in whole or part for up to

7  five years.

8     **E.     Supplemental Payments to Retirees (Section 15611-A).**  The Act discontinues

9  the Supplemental Retiree Benefit Reserve and returns its assets to the appropriate retirement trust

10  fund.  Any supplemental payments to retirees may not be funded from plan assets.

11     **F.     Savings.  (Section 1514-A).**  In the event a court determines that Section 1506-A is

12  illegal, then to the maximum extent permitted·by law, an equivalent amount of savings shall be

13  obtained through pay reductions, which shall not exceed 4% per year, capped at a maximum of

14  16% of pay.  The Measure includes additional provisions for severance of any provisions that are

15  somehow found unenforceable.

16     **G.     Future Changes (Sections 1503-A, 1504-A, 1505-A).**  The Act supersedes all

17  other conflicting or inconsistent "wage, pension or post-employment benefit provisions in the

18  Charter, ordinances, resolutions or other enactments."  The Act reserves to the Voters the right to

19  consider any change "related to pension and other post-employment benefits."  Subject to the

20  limits contained in the Act, the City Council has the authority to take all actions necessary to

21  effectuate the Act, with a goal that implementing ordinances become effective by September 30,

22  2012.  Many of the features of Measure B call for ordinances to implement Measure B's

23  provisions.

24                     **FIRST CAUSE OF ACTION**
                     (Declaratory Judgment, 28 U.S.C. §2201(a))

25

26     28.     Plaintiff incorporates by reference all paragraphs set forth above as though fully set

27  forth herein.

28  ///

1    29.    Plaintiff seeks a declaratory judgment that the following provisions of Measure B
2 do not violate: the contracts clause of the United States Constitution, Article I, §10; the contracts
3 clause of the California constitution, Article I, § 9; the federal due process guarantees of the 5th
4 and 14th amendments, state due process constitutional provisions; or promissory estoppel:

5        A.    Section 1506-A, Employee contribution rates.

6        B.    Section 1507-A, Voluntary election program ("VEP").

7        C.    Section 1509-A, Disability retirement.

8        D.    Section 1510-A, Emergency measure to contain COLAs.

9        E.    Section 1511-A, Supplemental retiree benefit reserve.

10        F.    Section 1514-A, Savings through compensation adjustment.

11        G.    Sections 1503-A, 1504-A, 1505-A, Limits on future changes to retirement benefits.

12    30.    An actual controversy over the legality of Measure B has arisen between the City
13 and Defendants. The City contends that the employee compensation, contributions and benefits
14 affected by Measure B are not vested contractual rights under the City's Charter, Municipal Code
15 and past practices, and therefore Measure B does not violate the federal or state contracts clauses,
16 federal or state due process or promissory estoppel. Defendants contend that some or all of the
17 employee compensation, contributions and benefits affected by Measure B are vested contractual
18 rights and that parts or all of Measure B violates their constitutional rights.

19    31.    A judicial decision is necessary to determine whether Measure B can be
20 implemented to change the benefits addressed in the Measure. The decision is urgently needed
21 because the Measure provides that employees will begin paying the increased contribution rate as
22 of June 23, 2013, and because if the Measure is invalidated, the City must move quickly to reduce
23 personnel costs by other methods such as layoffs and further reductions in services.

24    32.    This suit seeks this Court's ruling declaring that the City may implement Measure
25 B.

26 ///

27 ///

28 ///

**PRAYER**

WHEREFORE, Plaintiff City of San Jose prays for relief as follows:

1.  For a judicial declaration under 28 U.S.C. § 2201(a) (The Declaratory Relief Act) that Measure B does not violate the contract clauses of the federal or state constitutions, federal or state constitutional rights to due process, or promissory estoppel; and

2.  For a judicial declaration that the City may implement Measure B as enacted by the voters.

DATED: June 5, 2012                     MEYERS, NAVE, RIBACK, SILVER & WILSON


By:  _____
                    Arthur A. Hartinger
                    Attorneys for Plaintiff
                    City of San Jose

1898349.1

# EXHIBIT 1

# LIST OF LOCAL MEASURES
## PRESIDENTIAL PRIMARY ELECTION
### June 5, 2012

## City of San José
Majority Vote

**Measure B**

| | |
|---|---|
| **PENSION MODIFICATION** Shall the Charter be amended to modify retirement benefits of City employees and retirees by: increasing employees' contributions, establishing a voluntary reduced pension plan for current employees, establish pension cost and benefit limitations for new employees, modify disability retirement procedures, temporarily suspend retiree COLAs during emergencies, require voter approval for increases in future pension benefits? | YES |
| | NO |

Full Text of Measure B
Resolution on Measure B
City Clerk's Impartial Analysis
Argument in Favor
Argument Against
Rebuttal to Argument in Favor of Measure B
Rebuttal to Argument Against Measure B

4/12/2012 #2

**FULL TEXT OF MEASURE B**

## ARTICLE XV-A
## RETIREMENT

## PUBLIC EMPLOYEE PENSION PLAN AMENDMENTS - TO ENSURE FAIR AND SUSTAINABLE RETIREMENT BENEFITS WHILE PRESERVING ESSENTIAL CITY SERVICES

The Citizens of the City of San Jose do hereby enact the following amendments to the City Charter which may be referred to as: *"The Sustainable Retirement Benefits and Compensation Act."*

## Section 1501-A:    FINDINGS

The following services are essential to the health, safety, quality of life and well-being of San Jose residents:  police protection; fire protection; street maintenance; libraries; and community centers (hereafter "Essential City Services").

The City's ability to provide its citizens with Essential City Services has been and continues to be threatened by budget cuts caused mainly by the climbing costs of employee benefit programs, and exacerbated by the economic crisis.  The employer cost of the City's retirement plans is expected to continue to increase in the near future. In addition, the City's costs for other post employment benefits – primarily health benefits – are increasing.  To adequately fund these costs, the City would be required to make additional cuts to Essential City Services.

By any measure, current and projected reductions in service levels are unacceptable, and will endanger the health, safety and well-being of the residents of San Jose.

1

February 8, 2012

Without the reasonable cost containment provided in this Act, the economic viability of the City, and hence, the City's employment benefit programs, will be placed at an imminent risk.

The City and its residents always intended that post employment benefits be fair, reasonable and subject to the City's ability to pay without jeopardizing City services. At the same time, the City is and must remain committed to preserving the health, safety and well-being of its residents.

By this Act, the voters find and declare that post employment benefits must be adjusted in a manner that protects the City's viability and public safety, at the same time allowing for the continuation of fair post-employment benefits for its workers.

The Charter currently provides that the City retains the authority to amend or otherwise change any of its retirement plans, subject to other provisions of the Charter.

This Act is intended to strengthen the finances of the City to ensure the City's sustained ability to fund a reasonable level of benefits as contemplated at the time of the voters' initial adoption of the City's retirement programs. It is further designed to ensure that future retirement benefit increases be approved by the voters.

## Section 1502-A:    INTENT

This Act is intended to ensure the City can provide reasonable and sustainable post employment benefits while at the same time delivering Essential City Services to the residents of San Jose.

837680_2
Council Agenda: 3/6/12
Item No:      3.5(b)

February 8, 2012

The City reaffirms its plenary authority as a charter city to control and manage all compensation provided to its employees as a municipal affair under the California Constitution.

The City reaffirms its inherent right to act responsibly to preserve the health, welfare and well-being of its residents.

This Act is not intended to deprive any current or former employees of benefits earned and accrued for prior service as of the time of the Act's effective date; rather, the Act is intended to preserve earned benefits as of the effective date of the Act.

This Act is not intended to reduce the pension amounts received by any retiree or to take away any cost of living increases paid to retirees as of the effective date of the Act.

The City expressly retains its authority existing as of January 1, 2012, to amend, change or terminate any retirement or other post employment benefit program provided by the City pursuant to Charter Sections 1500 and 1503.

## Section 1503-A.     Act Supersedes All Conflicting Provisions

The provisions of this Act shall prevail over all other conflicting or inconsistent wage, pension or post employment benefit provisions in the Charter, ordinances, resolutions or other enactments.

The City Council shall adopt ordinances as appropriate to implement and effectuate the provisions of this Act.   The goal is that such ordinances shall become effective no later than September 30, 2012.

3

February 8, 2012

## Section 1504-A.    Reservation of Voter Authority

The voters expressly reserve the right to consider any change in matters related to pension and other post employment benefits. Neither the City Council, nor any arbitrator appointed pursuant to Charter Section 1111, shall have authority to agree to or provide any increase in pension and/or retiree healthcare benefits without voter approval, except that the Council shall have the authority to adopt Tier 2 pension benefit plans within the limits set forth herein.

## Section 1505-A.    Reservation of Rights to City Council

Subject to the limitations set forth in this Act, the City Council retains its authority to take all actions necessary to effectuate the terms of this Act, to make any and all changes to retirement plans necessary to ensure the preservation of the tax status of the plans, and at any time, or from time to time, to amend or otherwise change any retirement plan or plans or establish new or different plan or plans for all or any officers or employees subject to the terms of this Act.

## Section 1506-A.    Current Employees

(a)    "Current Employees" means employees of the City of San Jose as of the effective date of this Act and who are not covered under the Tier 2 Plan (Section 8).

(b)    Unless they voluntarily opt in to the Voluntary Election Program ("VEP," described herein), Current Employees shall have their compensation adjusted through additional retirement contributions in increments of 4% of pensionable pay per year, up to a maximum of 16%, but no more than 50% of the costs to

4

February 8, 2012

amortize any pension unfunded liabilities, except for any pension unfunded liabilities that may exist due to Tier 2 benefits in the future.  These contributions shall be in addition to employees' normal pension contributions and contributions towards retiree healthcare benefits.

(c)    The starting date for an employee's compensation adjustment under this Section shall be June 23, 2013, regardless of whether the VEP has been implemented.  If the VEP has not been implemented for any reason, the compensation adjustments shall apply to all Current Employees.

(d)    The compensation adjustment through additional employee contributions for Current Employees shall be calculated separately for employees in the Police and Fire Department Retirement Plan and employees in the Federated City Employees' Retirement System.

(e)    The compensation adjustment shall be treated in the same manner as any other employee contributions.  Accordingly, the voters intend these additional payments to be made on a pre-tax basis through payroll deductions pursuant to applicable Internal Revenue Code Sections. The additional contributions shall be subject to withdrawal, return and redeposit in the same manner as any other employee contributions.

### Section 1507-A:    One Time Voluntary Election Program ("VEP")

The City Council shall adopt a Voluntary Election Program ("VEP") for all Current Employees who are members of the existing retirement plans of the City as of the effective date of this Act.  The implementation of the VEP is contingent upon receipt of

5

February 8, 2012

IRS approval. The VEP shall permit Current Employees a one time limited period to enroll in an alternative retirement program which, as described herein, shall preserve an employee's earned benefit accrual; the change in benefit accrual will apply only to the employee's future City service. Employees who opt into the VEP will be required to sign an irrevocable election waiver (as well as their spouse or domestic partner, former spouse or former domestic partner, if legally required) acknowledging that the employee irrevocably relinquishes his or her existing level of retirement benefits and has voluntarily chosen reduced benefits, as specified below.

The VEP shall have the following features and limitations:

(a)    The plan shall not deprive any Current Employee who chooses to enroll in the VEP of the accrual rate (e.g. 2.5%) earned and accrued for service prior to the VEP's effective date; thus, the benefit accrual rate earned and accrued by individual employees for that prior service shall be preserved for payment at the time of retirement.

(b)    Pension benefits under the VEP shall be based on the following limitations:

     (i)      The accrual rate shall be 2.0% of "final compensation", hereinafter defined, per year of service for future years of service only.

     (ii)     The maximum benefit shall remain the same as the maximum benefit for Current Employees.

     (iii)     The current age of eligibility for service retirement under the existing plan as approved by the City

6

February 8, 2012

Council as of the effective date of the Act for all years of service shall increase by six months annually on July 1 of each year until the retirement age reaches the age of 57 for employees in the Police and Fire Department Retirement Plan and the age of 62 for employees in the Federated City Employees' Retirement System.  Earlier retirement shall be permitted with reduced payments that do not exceed the actuarial value of full retirement.  For service retirement, an employee may not retire any earlier than the age of 55 in the Federated City Employees' Retirement System and the age of 50 in the Police and Fire Department Retirement Plan.

(iv)     The eligibility to retire at thirty (30) years of service regardless of age shall increase by 6 months annually on July 1 of each year starting July 1, 2017.

(v)      Cost of living adjustments shall be limited to the increase in the consumer price index, (San Jose – San Francisco – Oakland U.S. Bureau of Labor Statistics index, CPI-U, December to December), capped at 1.5% per fiscal year.  The first COLA adjustment following the effective date of the Act will be prorated based on the number of remaining months in the year after retirement of the employee.

(vi)     "Final compensation" shall mean the average annual pensionable pay of the highest three consecutive years of service.

(vii)    An employee will be eligible for a full year of service credit upon reaching 2080 hours of regular time

7

February 8, 2012

worked (including paid leave, but not including overtime).

(c)     The cost sharing for the VEP for current service or current service benefits ("Normal Cost") shall not exceed the ratio of 3 for employees and 8 for the City, as presently set forth in the Charter. Employees who opt into the VEP will not be responsible for the payment of any pension unfunded liabilities of the system or plan.

(d)     VEP Survivorship Benefits.

    (i)      Survivorship benefits for a death before retirement shall remain the same as the survivorship benefits for Current Employees in each plan.

    (ii)     Survivorship benefits for a spouse or domestic partner and/or child(ren) designated at the time of retirement for death after retirement shall be 50% of the pension benefit that the retiree was receiving. At the time of retirement, retirees can at their own cost elect additional survivorship benefits by taking an actuarially equivalent reduced benefit.

(e)     VEP Disability Retirement Benefits.

    (i)      A service connected disability retirement benefit,      as hereinafter defined, shall be as follows:

The employee or former employee shall receive an annual benefit based on 50% of the average annual pensionable pay of the highest three consecutive years of service.

8

February 8, 2012

(ii)   A non-service connected disability retirement
benefit shall be as follows:

The employee or former employee shall receive 2.0%
times years of City Service (minimum 20% and
maximum of 50%) based on the average annual
pensionable pay of the highest three consecutive years
of service.  Employees shall not be eligible for a non-
service connected disability retirement unless they
have 5 years of service with the City.

(iii)  Cost of Living Adjustment ("COLA") provisions will be
the same as for the service retirement benefit in the
VEP.

**Section 1508-A:     Future Employees – Limitation on
Retirement Benefits – Tier 2**

To the extent not already enacted, the City shall adopt a
retirement program for employees hired on or after the
ordinance enacting Tier 2 is adopted.   This retirement program –
for new employees – shall be referred to as "Tier 2."

The Tier 2 program shall be limited as follows:

(a)   The program may be designed as a "hybrid plan" consisting
of a combination of Social Security, a defined benefit plan and/or
a defined contribution plan.  If the City provides a defined benefit
plan, the City's cost of such plan shall not exceed 50% of the total
cost of the Tier 2 defined benefit plan (both normal cost and
unfunded liabilities).  The City may contribute to a defined
contribution or other retirement plan only when and to the extent

9

February 8, 2012

the total City contribution does not exceed 9%. If the City's share of a Tier 2 defined benefit plan is less than 9%, the City may, but shall not be required to, contribute the difference to a defined contribution plan.

(b)    For any defined benefit plan, the age of eligibility for payment of accrued service retirement benefits shall be 65, except for sworn police officers and firefighters, whose service retirement age shall be 60. Earlier retirement may be permitted with reduced payments that do not exceed the actuarial value of full retirement. For service retirement, an employee may not retire any earlier than the age of 55 in the Federated City Employees' Retirement System and the age of 50 in the Police and Fire Department Retirement Plan.

(c)    For any defined benefit plan, cost of living adjustments shall be limited to the increase in the consumer price index (San Jose – San Francisco – Oakland U.S. Bureau of Labor Statistics index, CPI-U, December to December), capped at 1.5% per fiscal year. The first COLA adjustment will be prorated based on the number of months retired.

(d)    For any defined benefit plan, "final compensation" shall mean the average annual earned pay of the highest three consecutive years of service. Final compensation shall be base pay only, excluding premium pays or other additional compensation.

(e)    For any defined benefit plan, benefits shall accrue at a rate not to exceed 2% per year of service, not to exceed 65% of final compensation.

10

February 8, 2012

(f)    For any defined benefit plan, an employee will be eligible for a full year of service credit upon reaching 2080 hours of regular time worked (including paid leave, but not including overtime).

(g)    Employees who leave or have left City service and are subsequently rehired or reinstated shall be placed into the second tier of benefits (Tier 2).  Employees who have at least five (5) years of service credit in the Federated City Employees' Retirement System or at least ten (10) years of service credit in the Police and Fire Department Retirement Plan on the date of separation and who have not obtained a return of contributions will have their benefit accrual rate preserved for the years of service prior to their leaving City service.

(h)    Any plan adopted by the City Council is subject to termination or amendment in the Council's discretion.  No plan subject to this section shall create a vested right to any benefit.

## Section 1509-A:    Disability Retirements

(a)    To receive any disability retirement benefit under any pension plan, City employees must be incapable of engaging in any gainful employment for the City, but not yet eligible to retire (in terms of age and years of service).  The determination of qualification for a disability retirement shall be made regardless of whether there are other positions available at the time a determination is made.

(b)    An employee is considered "disabled" for purposes of qualifying for a disability retirement, if all of the following is met:

(i)    An employee cannot do work that they did before; and

11

February 8, 2012

    (ii)   It is determined that

        1)  an employee in the Federated City Employees' Retirement System cannot perform any other jobs described in the City's classification plan because of his or her medical condition(s); or

        2)  an employee in the Police and Fire Department Retirement Plan cannot perform any other jobs described in the City's classification plan in the employee's department because of his or her medical condition(s); and

    (iii)  The employee's disability has lasted or is expected to last for at least one year or to result in death.

(c)   Determinations of disability shall be made by an independent panel of medical experts, appointed by the City Council.  The independent panel shall serve to make disability determinations for both plans.  Employees and the City shall have a right of appeal to an administrative law judge.

(d)   The City may provide matching funds to obtain long term disability insurance for employees who do not qualify for a disability retirement but incur long term reductions in compensation as the result of work related injuries.

(e)   The City shall not pay workers' compensation benefits for disability on top of disability retirement benefits without an offset to the service connected disability retirement allowance to eliminate duplication of benefits for the same cause of disability, consistent with the current provisions in the Federated City Employees' Retirement System.

12

February 8, 2012

### Section 1510-A:   Emergency Measures to Contain Retiree Cost of Living Adjustments

If the City Council adopts a resolution declaring a fiscal and service level emergency, with a finding that it is necessary to suspend increases in cost of living payments to retirees the City may adopt the following emergency measures, applicable to retirees (current and future retirees employed as of the effective date of this Act):

(a)   Cost of living adjustments ("COLAs") shall be temporarily suspended for all retirees in whole or in part for up to five years. The City Council  shall restore COLAs prospectively (in whole or in part), if it determines that the fiscal emergency has eased sufficiently to permit the City to provide essential services protecting the health and well-being of City residents while paying the cost of such COLAs.

(b)   In the event the City Council restores all or part of the COLA, it shall not exceed 3% for Current Retirees and Current Employees who did not opt into the VEP and 1.5% for Current Employees who opted into the VEP and 1.5% for employees in Tier 2.

### Section 1511-A:   Supplemental Payments to Retirees

The Supplemental Retiree Benefit Reserve ("SRBR") shall be discontinued, and the assets returned to the appropriate retirement trust fund.  Any supplemental payments to retirees in addition to the benefits authorized herein shall not be funded from plan assets.

13

February 8, 2012

### Section 1512-A:     Retiree Healthcare

(a)   **Minimum Contributions.**   Existing and new employees must contribute a minimum of 50% of the cost of retiree healthcare, including both normal cost and unfunded liabilities.

(b)   **Reservation of Rights.**  No retiree healthcare plan or benefit shall grant any vested right, as the City retains its power to amend, change or terminate any plan provision.

(c)   **Low Cost Plan.**  For purposes of retiree healthcare benefits, "low cost plan" shall be defined as the medical plan which has the lowest monthly premium available to any active employee in either the Police and Fire Department Retirement Plan or Federated City Employees' Retirement System.

### Section 1513-A:     Actuarial Soundness (for both pension and retiree healthcare plans)

(a)   All plans adopted pursuant to the Act shall be subject to an actuarial analysis publicly disclosed before adoption by the City Council, and pursuant to an independent valuation using standards set by the Government Accounting Standards Board and the Actuarial Standards Board, as may be amended from time to time.  All plans adopted pursuant to the Act shall:  (i) be actuarially sound; (ii) minimize any risk to the City and its residents; and (iii) be prudent and reasonable in light of the economic climate. The employees covered under the plans must share in the investment, mortality, and other risks and expenses of the plans.

(b)   All of the City's pension and retiree healthcare plans must be actuarially sound, with unfunded liabilities determined annually

837680_2
Council Agenda: 3/6/12
Item No:      3.5(b)

February 8, 2012

through an independent audit using standards set by the Government Accounting Standards Board and the Actuarial Standards Board. No benefit or expense may be paid from the plans without being actuarially funded and explicitly recognized in determining the annual City and employee contributions into the plans.

(c) In setting the actuarial assumptions for the plans, valuing the liabilities of the plans, and determining the contributions required to fund the plans, the objectives of the City's retirement boards shall be to:

> (i) achieve and maintain full funding of the plans using at least a median economic planning scenario. The likelihood of favorable plan experience should be greater than the likelihood of unfavorable plan experience; and

> (ii) ensure fair and equitable treatment for current and future plan members and taxpayers with respect to the costs of the plans, and minimize any intergenerational transfer of costs.

(d) When investing the assets of the plans, the objective of the City's retirement boards shall be to maximize the rate of return without undue risk of loss while having proper regard to:

> (i) the funding objectives and actuarial assumptions of the plans; and

> (ii) the need to minimize the volatility of the plans' surplus or deficit and, by extension, the impact on the volatility of contributions required to be made by the City or employees.

15

837680_2
Council Agenda: 3/6/12
Item No:      3.5(b)

February 8, 2012

## Section 1514-A:    Savings

In the event Section 6 (b) is determined to be illegal, invalid or unenforceable as to Current Employees (using the definition in Section 6(a)), then, to the maximum extent permitted by law, an equivalent amount of savings shall be obtained through pay reductions.  Any pay reductions implemented pursuant to this section shall  not exceed 4% of compensation each year, capped at a maximum of 16% of pay.

## Section 1515-A:    Severability

(a)    This Act shall be interpreted so as to be consistent with all federal and state laws, rules and regulations.  The provisions of this Act are severable.  If any section, sub-section, sentence or clause ("portion") of this Act is held to be invalid or unconstitutional by a final judgment of a court, such decision shall not affect the validity of the remaining portions of this amendment. The voters hereby declare that this Act, and each portion, would have been adopted irrespective of whether any one or more portions of the Act are found invalid. If any portion of this Act is held invalid as applied to any person or circumstance, such invalidity shall not affect any application of this Act which can be given effect.  In particular, if any portion of this Act is held invalid as to Current Retirees, this shall not affect the application to Current Employees.  If any portion of this Act is held invalid as to Current Employees, this shall not affect the application to New Employees.  This Act shall be broadly construed to achieve its stated purposes.  It is the intent of the voters that the provisions of this Act be interpreted or implemented by the City, courts and others in a manner that facilitates the purposes set forth herein.

16

February 8, 2012

(b)   If any ordinance adopted pursuant to the Act is held to be invalid, unconstitutional or otherwise unenforceable by a final judgment, the matter shall be referred to the City Council for determination as to whether to amend the ordinance consistent with the judgment, or whether to determine the section severable and ineffective.

17

RES NO 76158

## RESOLUTION NO. <u>76158</u>

**A RESOLUTION OF THE COUNCIL OF THE CITY OF SAN JOSE REPEALING RESOLUTION NO. 76087 AND CALLING AND GIVING NOTICE OF, ON ITS OWN MOTION, THE SUBMISSION TO THE ELECTORS OF THE CITY OF SAN JOSE, AT A SPECIAL MUNICIPAL ELECTION TO BE HELD ON JUNE 5, 2012, A BALLOT MEASURE PROPOSAL TO AMEND THE SAN JOSE CITY CHARTER TO ADD A NEW ARTICLE XV-A TO REFORM CITY PENSIONS AND BENEFITS PROVIDED TO CURRENT EMPLOYEES AND ESTABLISH REDUCED PENSIONS AND BENEFITS FOR NEW EMPLOYEES AND TO PLACE OTHER LIMITATIONS ON PENSIONS AND BENEFITS**

**WHEREAS,** Charter Section 1600 authorizes the City Council to set the date for a Special Municipal Election; and

**WHEREAS,** the City Council adopted Resolution No. 76087 and approved a ballot measure for the June 5, 2012 election but directed the City Clerk not to submit the ballot measure to the Registrar of Voters to allow time for further negotiations on the ballot measure language; and

**WHEREAS,** the City Council now desires to submit to the electors of the City of San José at a Special Municipal Election a ballot measure proposal to amend the San José City Charter to add a new Article XV-A to reform pensions and benefits for current employees, to establish reduced pensions and benefits for new employees and to place other limitations on pensions and benefits; and

**NOW, THEREFORE,** BE IT RESOLVED BY THE COUNCIL OF THE CITY OF SAN JOSE THAT:

<u>**SECTION 1**</u>. Resolution No. 76087 is hereby repealed.

<u>**SECTION 2**</u>. A Special Municipal Election is hereby called and ordered to be held in the City of San José on June 5, 2012, for the purpose of voting on a ballot measure to

1

amend the San José City Charter to add a new Article XV-A to reform pensions and benefits for current employees and to establish different pensions and benefits for new employees and to place other limitations on pensions and benefits. The proposed City Charter amendment is attached to this Resolution as Exhibit A.

**SECTION 3.** The ballot measure will be placed on the ballot for the June 5, 2012 election in the following form:

**PENSION REFORM**

To protect essential services, including neighborhood police patrols, fire stations, libraries, community centers, streets and parks, shall the Charter be amended to reform retirement benefits of City employees and retirees by: increasing employees' contributions, establishing a voluntary reduced pension plan for current employees, establish pension cost and benefit limitations for new employees, reform disability retirements to prevent abuses, temporarily suspend retiree COLAs during emergencies, require voter approval for increases in future pension benefits?

| YES | |
|-----|---|
| NO  | |

2

**SECTION 4.** The City Council hereby requests the Board of Supervisors of the County of Santa Clara, California to permit the Registrar of Voters of Santa Clara County to render to the City of San José such services as the City Clerk of the City of San José may request relating to the conduct of the above-described Special Municipal Election with respect to the following matters:

> Coordination of election precincts, polling places, voting booths, voting systems and election officers; Printing and mailing of voter pamphlets; Preparation of tabulation of result of votes cast.

**SECTION 5.** The City Council hereby requests that the Registrar of Voters of the County of Santa Clara consolidate the Special Municipal Election called and ordered to be held on June 5, 2012 with any other election that may be held on that date.

**SECTION 6.** The City Council hereby authorizes the Board of Supervisors of Santa Clara County, California to canvass the returns of the Special Municipal Election.

**SECTION 7.** The City Council hereby directs the City Clerk to reimburse the County of Santa Clara in full for any of the above-mentioned services which may be performed by the Registrar of Voters, upon presentation of a bill to the City, with funds already appropriated to the City Clerk for election purposes.

**SECTION 8.** The City Council hereby directs the City Clerk to take all actions necessary to facilitate the Special Municipal Election in the time frame specified herein and comply with provisions of the Elections Code of the State of California, City Charter, Ordinances, Resolutions and Policies with regard to the conduct of the Special Municipal Election.

**SECTION 9.** Pursuant to Section 12111 of the California Elections Code and Section 6061 of the California Government Code, the City Council hereby directs the City Clerk to (a) cause a synopsis of the proposed measure to be published in the San José Mercury News, a newspaper of general circulation within the City of San José; (b)

3

consolidate the Notice of Measure to be Voted with the Notice of Election into a single notice; (c) transmit a copy of the Measure to the City Attorney and cause the following statement to be printed in the impartial analysis to be prepared by the City Attorney: "If you would like to read the full text of the measure, see www.sanjoseca.gov/clerk/elections/Election.asp or call 408-535-1260 and a copy will be sent at no cost to you."; and (d) do all other things required by law to submit the specified measure above to the electors of the City of San José at the Special Municipal Election, including causing the full text of the proposed measure to be made available in the Office of the City Clerk at no cost and posted on the City Clerk's website.

**SECTION 10.** Pursuant to Sections 9282 and 9285 of the California Elections Code, the City Council hereby approves the submittal of arguments for and against the ballot measure, if any, and authorizes the Mayor to author and submit a ballot measure argument in favor of the ballot measure and also approves the submittal of rebuttal arguments in response to arguments for and against the ballot measure and authorizes any member or members of the City Council to author and submit a rebuttal, if any.

**SECTION 11.** The City Council hereby directs the City Clerk to transmit a copy of the measure qualifying for placement on the ballot to the City Attorney for preparation of an impartial analysis.

4

RES NO 76158

ADOPTED this 6th day of March, 2012, by the following vote:

AYES:         CONSTANT,   HERRERA,   LICCARDO,   NGUYEN, OLIVERIO, PYLE, ROCHA; REED.

NOES:         CAMPOS, CHU, KALRA.

ABSENT:     NONE.

DISQUALIFIED:  NONE.

CHUCK REED
Mayor

ATTEST:

DENNIS D. HAWKINS, CMC
City Clerk

5